UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BIG EASY ENERGY, LLC                                CIVIL ACTION

VERSUS                                              NO: 09-3231

CONGLOMERATE GAS, ET AL.                            SECTION: "A" (1)

## ORDER AND REASONS

Before the Court is a **Motion to Dismiss or Transfer (Rec. Doc. 12)** filed by Defendants Conglomerate Gas II, L.P., Vancouver Sky Management, LLC, Conglomerate Gas, and Conglomerate Holdings. Plaintiff Big Easy Energy, LLC opposes the Motion. The Motion, set for hearing on November 11, 2009, is before the Court on the briefs without oral argument. For the reasons that follow, the motion is GRANTED.

## I. BACKGROUND

The instant controversy concerns a contractual dispute between Plaintiff Big Easy Energy, LLC ("Big Easy" or "Plaintiff") and Defendants Vancouver Sky Management, LLC and Conglomerate Gas II, L.P. (collectively "Defendants").[1] Declaration of Scott J. Brown ("Brown

---

[1] Defendants assert that named Defendants Conglomerate Gas and Conglomerate Holdings are fictitious entities. Meeker Declaration at ¶ 4. Defendants also argue that Plaintiff has failed to assert any jurisdictional allegations with respect to Vancouver Sky Management, LLC, a general partner of Conglomerate Gas II, L.P. *Id.* at ¶ 3; Defendants' Memorandum in Support of their Motion to Dismiss or Transfer ("Motion"), pg. 8. The

Declaration"), ¶ 1; Declaration of D. Alan Meeker ("Meeker Declaration"), ¶¶ 2 & 3. Plaintiff was formed under Louisiana law, has its principal place of business in New Orleans, and, at the time of the events underlying this controversy, three of its four members were Louisiana citizens. Brown Declaration at ¶ 2.[2] Defendant Vancouver Sky Management, LLC was organized under Texas law, has its sole place of business in Fort Worth, and has no members who are citizens of Louisiana. Meeker Declaration at ¶ 2. Likewise, Defendant Conglomerate Gas II, L.P. was organized under Texas law, has its sole place of business in Fort Worth, and has no members who are citizens of Louisiana. *Id.* at ¶ 4.

In early 2007, D. Alan Meeker, manager of Vancouver Sky Management, LLC, informed Scott J. Brown, managing member of Big Easy, that the Defendants were interested in purchasing certain oil and gas properties in Texas, known as the "Joe Pool" acreage, and reselling that property to Chesapeake Exploration, LLC ("Chesapeake"). Memorandum in Opposition to Motion to Dismiss or Transfer ("Opposition"), pg. 4; Meeker Declaration at ¶ 2; Brown Declaration at ¶ 1. Defendants were, however, in need of funding to carry out the contemplated transaction, and therefore orally contracted with Plaintiff to obtain Plaintiff's help in obtaining financing. Opposition at pg. 4. In exchange for this assistance, Defendants agreed

---

relationship between Conglomerate Gas II, L.P. and Vancouver Sky Management, LLC is irrelevant to the instant Motion. The Court will therefore not distinguish between the two entities.

[2]Except where otherwise noted, the facts recounted herein are those alleged by Plaintiff Big Easy Energy, LLC which the Court is obligated to accept as true except where controverted by Defendants. *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 342-43 (5th Cir. 2004) (When a court decides a motion to dismiss for lack of personal jurisdiction "without holding an evidentiary hearing, the plaintiff must make only a *prima facie* showing of the facts on which jurisdiction is predicated. In determining whether a *prima facie* case exists, the Court must accept as true the plaintiff's uncontroverted allegations, and resolve in its favor all conflicts between the jurisdictional facts contained in the parties' affidavits and other documentation.") (citations, quotation and alteration omitted).

to pay Plaintiff five percent of whatever profit they realized from the resale of the Joe Pool acreage. *Id.* at pg. 5. This agreement was reached through a series of phone calls between Mr. Meeker, in Fort Worth, Texas, and Mr. Brown, in New Orleans, Louisiana. *Id.*

Plaintiff later made several phone calls, and sent several emails, to various individuals in New York and identified Madoff Energy, LLC ("Madoff Energy") as a potential investment partner for Defendants. *Id.* Plaintiff then arranged an April 4, 2007 meeting between Mr. Meeker and Greg Imbruce of Madoff Energy at a restaurant in New Orleans. *Id.* Mr. Meeker traveled to New Orleans specifically to attend this meeting. *Id.* at pg. 6. Defendants subsequently formed an agreement with Madoff Energy to finance their purchase of the Joe Pool acreage. *Id.* Defendants then purchased the Joe Pool acreage and resold it to Chesapeake. *Id.* at pg. 7. Plaintiff alleges that its contract with Defendants entitles it to $167,202.37 of the profit realized from the resale of the Joe Pool acreage. *Id.* After the exchange of several emails, Plaintiff determined that Defendants did not intend to pay it the money it was allegedly due, and filed the instant lawsuit. *Id.* at pp. 7-8. In the Motion now before the Court, Defendants argue that this Court lacks personal jurisdiction over the instant dispute, and in the alternative, that the Eastern District of Louisiana is an improper forum for these proceedings. Motion at pp. 6-9.

## II. **STANDARD**

A federal district court sitting in diversity has personal jurisdiction over a non-resident defendant to the same extent as a state court in the state in which the district court is located. *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 242 (5th Cir. 2008), *citing Access Telecomm., Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 716 (5th Cir. 1999). The

limits of Louisiana's long-arm statute are coextensive with constitutional due process limits. *Id., citing A & L Energy, Inv. v. Pegasus Group*, 00-3255, p. 3 (La. 6/29/01); 791 So. 2d 1266, 1270. To determine whether exercising personal jurisdiction over a non-resident defendant is compatible with due process the court determines 1) whether the defendant has purposefully availed itself of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and 2) whether the exercise of jurisdiction over the defendant offends traditional notions of fair play and substantial justice. *Walk Haydel*, 517 F.3d at 243, *quoting Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001).

Personal jurisdiction "may be general or specific." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009), *quoting Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 484 (5th Cir. 2008). General jurisdiction exists where the defendant's contacts with the forum state are substantial, continuous, and systematic. *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 374 (5th Cir. 2003), *quoting Cent. Freight Lines v. APA Transport Corp.*, 332 F.2d 376, 381 (5th Cir. 2003). Specific jurisdiction may exist where "the plaintiff's claim against the non-resident defendant arises out of or relates to activities that the defendant purposefully directed at the forum state." *Mullins*, 564 F.3d at 398, *citing Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000), *quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d (1985). "A single act may support specific jurisdiction where the act is directed at residents of the forum, and the cause of action relates to the act." *Religious Tech. Ctr.*, 339 F.3d at 375, *citing Burger King Corp.*, 471 U.S. at 476 n. 18. Personal jurisdiction cannot, however, be founded upon "the mere fortuity that the plaintiff happens to be a resident of

the forum." *Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1147 (5th Cir. 1985). The Fifth Circuit has "articulated a three-step analysis for specific jurisdiction: (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposefully directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009), *quoting Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006) (quotations omitted).

## III. DISCUSSION

Plaintiff argues that this Court has specific personal jurisdiction over the instant controversy and marshals several allegations in support of this contention, including that Plaintiff is based in Louisiana, that multiple phone calls and emails were exchanged between Louisiana and Texas in the process of forming Plaintiff's oral contract with Defendants and in performing Plaintiff's obligations thereunder, and that a material part of the contract was performed in Louisiana. Opposition at pg. 12. Defendants assert that they never formed a contract with Plaintiff, and that, even if they had, the material part of the contract - the purchase and resale of the Joe Pool acreage, was to be performed in Texas. Motion at pg. 7. Even if the Court accepts all of Plaintiff's allegations as true, it has not alleged sufficient minimum contacts to make a *prima facie* showing that this Court has personal jurisdiction over this dispute.

Specific jurisdiction exists where "(1) the defendant has minimum contacts with the forum state, i.e., [where] it purposefully directed its activities toward the forum state or

purposefully availed itself of the privileges of conducting activities there; (2) [where] the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) [where] the exercise of personal jurisdiction is fair and reasonable." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009), *quoting Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006) (quotations omitted).[3] "The 'minimum contacts' inquiry is fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that it 'reasonably anticipates being haled into court.'" *McFadin*, 587 F.3d at 759, *quoting Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006).

When specific jurisdiction allegedly arises from a breach of contract claim, such as in the controversy *sub judice*, merely forming a contract with the resident of a state "does not automatically establish sufficient minimum contacts" with that state. *Dickson Marine Inc. v. Panalpina, Inc.* 179 F.3d 331, 337 (5th Cir. 1999). The focus in evaluating whether or not a Defendant has sufficient minimum contacts with the forum state to establish specific personal jurisdiction over a breach of contract claim is "the prior negotiations," "the actual course of dealing between the parties," and the "contemplated future consequences of the agreement." *Id.* The Court will examine these contacts in turn.

In support of its argument that this Court has personal jurisdiction over this dispute, Plaintiff states that it is based in Louisiana and that three of its four members at the time of the events underlying this controversy were Louisiana citizens. Brown Decl. at ¶ 2. It also alleges

---

[3]Because Plaintiff has not alleged sufficient minimum contacts between Defendants and the forum state, Louisiana, the Court need not examine the relationship between Defendants' contacts and Plaintiff's claim, or the fairness of exercising personal jurisdiction over the Defendants.

that, prior to the formation of its contract with Defendants, Mr. Meeker "indicated to Mr. Brown and others of Big Easy that [Defendants] wanted to buy certain oil and gas properties in Texas," and that it formed the contract with Defendants through a series of phone calls exchanged "primarily between Mr. Meeker in Fort Worth and Scott Brown in New Orleans." Opposition at pp. 4-5.

The only contacts relevant to personal jurisdiction are those that the foreign defendant has directed at the forum state. *Mullins*, 564 F.3d at 398. Regarding the pre-contract negotiations, it is not clear from Plaintiff's allegations which of these communications were initiated by Defendants and which were initiated by Plaintiff. Plaintiff states in its Opposition that "Mr. Meeker indicated" that Defendants wanted to buy the Joe Pool acreage, but does not state how the conversation came about. Opposition at pg. 4. Likewise, Plaintiff alleges that "offer and acceptance was accomplished through a series of phone calls between Mr. Meeker . . . and Mr. Brown," but does not specify how many of these phone calls were made by Defendants. *Id.* at pg. 5. Even assuming that Defendants initiated all of these contacts, "allegations that defendants sent communications to [plaintiff] in Louisiana . . . are the type of merely fortuitous contacts that cannot support personal jurisdiction (i.e., they are contacts resulting from the mere fact that the plaintiff is a resident of the forum state . . .)." *Brammer Eng'g, Inc. v. East Wright Mountain Ltd. P'ship*, No. 08-30566, 2009 WL 150653, at *2 (5th Cir. Jan. 22, 2009).

Regarding the actual course of dealing between the parties under their contract, Plaintiff alleges that a material part of its oral contract with Defendants was performed in Louisiana. Specifically, Plaintiff alleges that it was contracted to locate funding for Defendants' purchase of

7

the Joe Pool acreage, and that it accomplished this by making various communications with Madoff Energy in New York, and by arranging a meeting in New Orleans between Greg Imbruce, a representative of Madoff Energy, and Mr. Meeker, a representative of Defendants who had traveled to New Orleans specifically to attend the meeting. Opposition at pg. 12. Plaintiff further alleges that, pursuant to the contract, it was to receive payment in Louisiana. *Id.* These contacts provide only limited support for personal jurisdiction.

Assuming that the parties did form a binding oral contract (a contention disputed by Defendants), a material part of the contract was performed in Louisiana when Plaintiff located an investor to enable Defendants' purchase of the Joe Pool acreage. "[W]here the contract is to be performed . . . is a weighty consideration" in determining personal jurisdiction. *Command-Aire Corp. v. Ontario Mech. Sales and Serv. Inc.*, 963 F.2d 90, 94 (5th Cir. 1992). Nevertheless, *most* of the material part of the contract - the formation of an agreement between Defendants and Madoff Energy and Defendants' purchase and resale of the Joe Pool acreage - was performed in Texas. Motion at pg. 7. Even more significant, Plaintiff's decision to perform its obligations under the contract by directing communications from, and holding a meeting in, Louisiana, was a unilateral decision on its part. Where "the forum plaintiff's decision to perform its contractual obligation within its own forum state is totally unilateral, it cannot be viewed as purposeful on the part of the nonresident and the weight necessarily is diminished." *Command-Aire*, 963 F.3d at 94. Although Defendants could have reasonably anticipated that Plaintiff, as a Louisiana entity, would perform its obligations under the contract in Louisiana, Plaintiff has not alleged that the contract contemplated performance within Louisiana. Thus, Plaintiff's performance was

8

not a purposeful contact by Defendants, and its weight in the personal jurisdiction calculation is "necessarily [] diminished." *Id.*

The third relevant set of contacts in determining whether specific personal jurisdiction exists over a breach of contract claim is "the contemplated future consequences of the agreement." *Dickson Marine,* 179 F.3d at 337. The alleged contract between Plaintiff and Defendants concerned only one related set of transactions - the location of an investor, the purchase of the Joe Pool acreage, and the resale of the Joe Pool acreage. This type of "one-shot" arrangement does not weigh heavily in favor of a finding of personal jurisdiction. *Latshaw v. Johnston*, 167 F.3d 208, 213 (5th Cir. 1999) (finding the existence of an "ongoing business relationship" to be significant to a finding of personal jurisdiction); *see also I2 Tech. US, Inc. v. Lanell*, No. 02-0134, 2002 WL 1461929, at *5 (N.D. Tex. July 2, 2002).

Finally, the Court notes that the Fifth Circuit has found more substantial contacts than those alleged by Plaintiff to be insufficient to support a finding of specific personal jurisdiction. In *Hydrokinetics, Inc. v. Alaska Mech., Inc.,* the defendant, Alaska Mechanical, Inc. ("Alaska Mechanical"), an Alaska company, was awarded a contract by the United States Navy to "furnish and install certain waste heat recovery silencer units" at Adak, Alaska. 700 F.2d 1026, 1027 (5th Cir. 1983). The plaintiff, Hydrokinetics, Inc. ("Hydrokinetics"), a Texas company, then communicated to Alaska Mechanical that it was interested in providing these units, and negotiations ensued between Alaska Mechanical, in Alaska, and Hydrokinetics, in Texas, through "telex, telephone and letter." *Id*. During negotiations, two representatives from Alaska Mechanical visited Hydrokinetics' plant in Texas. *Id.* Under the contract between the parties,

Hydrokinetics was to deliver the units to Alaska Mechanical; the units were eventually shipped to Seattle, Washington and then transported to Adak, Alaska. *Id.* Alaska Mechanical then informed Hydrokinetics that the units were unsuitable, and Hydrokinetics filed suit in Texas. *Id.* In affirming the district court's order dismissing the case for lack of personal jurisdiction, the Fifth Circuit stated that "[a]lthough it did agree to purchase goods which it knew were to be manufactured by Hydrokinetics in Texas, no performance by Alaska Mechanical was to take place in Texas [other than payment] . . . nor do we weigh heavily that Alaska Mechanical may have mailed payments to [Texas] . . . Yet we do consider significant that only a single transaction is involved in this case. *Id.* at 1029. Whereas *Hydrokinetics* involved the manufacture of goods which the defendant *knew* would take place in Texas, the instant dispute involves the procurement of an investor, an activity that Plaintiff could have accomplished, for example, by traveling to New York. Even though Defendants could have anticipated that Plaintiff, as a Louisiana company, would perform its obligations under the contract within Louisiana, the location of this performance was less certain than in *Hydrokinetics,* which was itself insufficient to confer specific jurisdiction. Thus it was less likely in the instant dispute that Defendants could have "'reasonably anticipate[d] being haled into court.'" *McFadin*, 587 F.3d at 759, *quoting Luv N' Care,* 438 F.3d at 469.

Plaintiff has not alleged any facts that weigh heavily in favor of a finding of specific personal jurisdiction. The sum total of relevant contacts that Defendants have directed to Louisiana are phone calls, one in-person visit, and the formation of a contract with a Louisiana resident, the Plaintiff, which Plaintiff happened to perform in Louisiana. These allegations

amount to insufficient contacts to support a finding that this Court has specific personal jurisdiction over this dispute. This action is therefore dismissed for lack of personal jurisdiction.

Accordingly, and for the foregoing reasons;

**IT IS HEREBY ORDERED** that the **Motion to Dismiss or Transfer (Rec. Doc. 12)** filed by Defendants Conglomerate Gas II, L.P., Vancouver Sky Management, LLC, Conglomerate Gas, and Conglomerate Holdings is **GRANTED**;

**IT IS FURTHER ORDERED** that this action is **DISMISSED WITHOUT PREJUDICE**.

This 16th day of March 2010.

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE